**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rita Dominguez,<br><br>                 Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>                 Defendant. | No. CV-22-02174-PHX-DWL<br><br>**ORDER** |

Plaintiff challenges the denial of her applications for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 11), the Commissioner's answering brief (Doc. 13), and Plaintiff's reply (Doc. 14), as well as the Administrative Record (Doc. 10, "AR"), and now reverses the decision of the Administrative Law Judge ("ALJ") and remands for further proceedings.

I.   Procedural History

In July 2020, Plaintiff filed applications for disability and disability insurance benefits and for supplemental security income, in both instances alleging a disability onset date of April 1, 2019. (AR at 19.) The Social Security Administration ("SSA") denied Plaintiff's applications at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.*) On March 10, 2022, following an online video hearing, the ALJ issued an unfavorable decision. (*Id.* at 19-29.) The Appeals Council later denied review. (*Id.* at 1-5.)

II.  <u>The Sequential Evaluation Process And Judicial Review</u>

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III. <u>The ALJ's Decision</u>

The ALJ found that Plaintiff had not engaged in substantial, gainful work activity since the alleged onset date and that Plaintiff had the following severe impairments: "obesity; diabetes mellitus; diabetic peripheral neuropathy; hypertension; right knee osteoarthritis; and intermittent bilateral carpal tunnel syndrome." (AR at 21.) Next, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listing. (*Id.* at 22-23.) Next, the ALJ calculated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light exertional work as defined in the regulations with the following limitations: she is incapable of climbing ladders, ropes, and scaffolds and is incapable of crawling; she is capable of occasionally climbing ramps and stairs and occasionally balancing, stooping, kneeling, and crouching; she is capable of frequently handling, fingering, feeling, and grasping with the bilateral hands; she is capable of no more than occasional exposure to extreme temperatures, humidity and wetness, and "Atmospheric Conditions" as such term is defined in the Selected Characteristics of Occupations of the Dictionary of Occupational Titles (i.e., "[e]xposure to conditions such as fumes, noxious odors, dusts, mists, gases, and poor ventilation that affect the respiratory system, eyes[,] or the skin"); she is capable of frequently pushing and/or pulling with the lower right extremity; she is capable of frequently operating foot controls with the bilateral feet; and she is able to perform work that does not require driving as a part of work duties or require more than occasional work-related exposure to hazards, such as unprotected heights and unguarded moving machinery.

(*Id.* at 23-24.)

As part of this RFC determination, the ALJ evaluated Plaintiff's symptom testimony, concluding that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 25.) The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) K. Mallik, M.D., state agency medical consultant ("minimally persuasive"); (2) S. Lee, M.D., state agency medical consultant ("minimally persuasive"); (3) Erica Neal, P.A.-C., consultative examiner ("only somewhat persuasive"); (4) Freddy Montenegro, N.P., treating source ("minimally persuasive"); and (5) Seth Gillespie, P.A.-C., treating source ("only somewhat persuasive"). (*Id.* at 26-28.)

Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff was

capable of performing her past relevant work as a General Merchandise Salesperson. (*Id.* at 28-29.) Thus, the ALJ concluded that Plaintiff is not disabled. (*Id*. at 29.)

IV. Discussion

Plaintiff presents two issues on appeal: (1) whether the ALJ erred in discrediting the opinions of PA Gillespie; and (2) whether the ALJ erred in discrediting her symptom testimony. (Doc. 11 at 1-2.) Plaintiff further argues that "[r]emand for calculation of benefits would be an appropriate remedy in this case. Only in the alternative should this Court remand for further administrative proceedings." (*Id.* at 20.)

A. **PA Gillespie**

1. Standard Of Review

In January 2017, the SSA amended the regulations concerning the evaluation of medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because the new regulations apply to applications filed on or after March 27, 2017, they are applicable here.

The new regulations, which eliminate the previous hierarchy of medical opinions, provide in relevant part as follows:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency . . . .

20 C.F.R. § 416.920c(a).[1] Regarding the "supportability" factor, the new regulations explain that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding the "consistency" factor, the "more consistent a medical opinion(s) . . . is with the evidence

---

[1] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c(c).

from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2)

Recently, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Thus, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* With that said, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (cleaned up). Although an "ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records . . . the ALJ no longer needs to make specific findings regarding these relationship factors . . . ." *Id.*

    2.  PA Gillespie's Opinions

On July 25, 2020, PA Gillespie filled out a form entitled "Medical Assessment Of Ability To Do Work Related Physical Activities." (AR at 395-97.) In this form, PA Gillespie checked boxes indicating, *inter alia*, that Plaintiff could stand and/or work for a total of less than two hours in an eight-hour workday; could sit for a total of two hours in an eight-hour workday; and has various postural, hand-related, and environmental limitations. (*Id.*)

…

### 3. The ALJ's Evaluation Of PA Gillespie's Opinions

The ALJ found PA Gillespie's opinions "only somewhat persuasive." (AR at 28.) The ALJ's full rationale was as follows:

> These opinion[s] are only somewhat persuasive, in part because Mr. Gillespie did not provide any explanatory support for his various opinions. Furthermore, Mr. Gillespie's treatment records and exam notes do not fully support his opinion statements, as they describe the claimant as an individual with no gross motor or sensory deficits, grossly intact cranial nerves, and no signs of edema or weakness. Mr. Gillespie's opinions are also inconsistent with exam findings from other examiners describing the claimant as an individual with normal musculoskeletal range of motion, strength, sensation, and gait. For these reasons, Mr. Gillespie's opinions are only somewhat persuasive.

(*Id.*, record citations omitted.)

### 4. The Parties' Arguments

Plaintiff argues that the ALJ provided legally insufficient reasons for discrediting PA Gillespie's opinions. (Doc. 11 at 9-15.) More specifically, Plaintiff argues that the ALJ's first error was in "fail[ing] to explain which portions of PA Gillespie's opinions were persuasive or unpersuasive, supported or unsupported, or consistent or inconsistent with the record." (*Id.* at 11-12.) Second, Plaintiff argues that "[i]t was error to discount the check-box questionnaires as insufficient to support the treating source assessments based on a lack of narrative explanation." (*Id.* at 12-13.) Third, Plaintiff argues that it was error for the ALJ to "discount[] unnamed portions of PA Gillespie's assessments based on the ALJ's belief that they were unsupported or inconsistent with normal examination findings in PA Gillespie's and other providers' notes" because "the ALJ failed to reconcile [her] presentation at time-limited appointments with [her] functioning *over an eight-hour workday*." (*Id.* at 13.) Fourth, Plaintiff argues that certain objective medical evidence in the record—including "findings of lower extremity neuropathy on nerve studies and moderate to severe arthritis on right knee imaging"—supports, rather than undermines, PA Gillespie's opinions. (*Id.* at 14.)[2]

---

[2] Page 14 of Plaintiff's opening brief also contains a paragraph that seems to challenge the sufficiency of the ALJ's rationale for discrediting the opinions of PA Neal. (Doc. 11 at 14.) This paragraph appears to have been inserted in error, as it does not track the relevant argument heading (*id.* at 9) or the statement of issues (*id.* at 1), both of which

The Commissioner defends the sufficiency of the ALJ's rationale for discrediting the opinions of PA Gillespie. (Doc. 13 at 3-5.) As for the supportability factor, the Commissioner argues that (1) "[a]n ALJ may reject checkbox forms citing no meaningful evidence" and (2) the ALJ properly "observed Mr. Gillespie's own treatment notes did not support the opinion" because they "show Plaintiff had no motor or sensory deficits and normal extremities." (*Id.* at 3-4.) As for the consistency factor, the Commissioner argues that the ALJ's finding of inconsistency was supported by substantial evidence because "other medical examinations show Plaintiff had a normal range of motion, strength, sensation, and gait." (*Id.* at 4.) Finally, the Commissioner argues that the ALJ's RFC determination undermines Plaintiff's arguments regarding a supposed lack of specificity, because the RFC shows that the ALJ did not credit PA Gillespie's opinions regarding Plaintiff's ability to lift, carry, stand, walk, and sit but credited certain other aspects of PA Gillespie's opinions. (*Id.* at 4-5.)

In reply, Plaintiff accuses the Commissioner of failing to respond to her arguments regarding the ALJ's failure to identify the specific portions of PA Gillespie's that the ALJ found unpersuasive (Doc. 14 at 4-5); contends that the Commissioner's checkbox arguments are unavailing because PA Gillespie's opinions were supported by PA Gillespie's underlying treatment notes (*id.* at 5); and contends that the "normal" examination findings identified by the Commissioner do not establish a lack of supportability because the ALJ "failed to explain how those normal findings were inconsistent with PA Gillespie's assessed limitations" (*id.* at 5-6).

5.  Analysis

The ALJ's evaluation of PA Gillespie's opinions was free of harmful error. "The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Woods*, 32 F.4th at 792 (cleaned up). Here, the ALJ expressly

indicate that the only challenge to the ALJ's evaluation of medical opinion evidence relates to PA Gillespie. *See also* LRCiv 16.1(a)(1), (4) (opening brief must identify the issues presented for review, both in the statement of issues and in the argument section).

- 7 -

1    considered both of the required factors in relation to PA Gillespie.  (AR at 28.)

2           The ALJ's determination as to each factor was also supported by substantial
3    evidence.  The ALJ identified two reasons for discrediting PA Gillespie's opinions
4    pursuant to the supportability factor: (1) "Mr. Gillespie did not provide any explanatory
5    support for his various opinions"; and (2) "Mr. Gillespie's treatment records and exam
6    notes do not fully support his opinion statements."  (*Id.*)  As for the first reason, although
7    "there is no authority that a 'check-the-box' form is any less reliable than any other type of
8    form," *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017), the Ninth Circuit has
9    also clarified that "[a]n ALJ is not required to take medical opinions at face value, but may
10   take into account the quality of the explanation when determining how much weight to
11   give a medical opinion.  While an opinion cannot be rejected merely for being expressed
12   as answers to a check-the-box questionnaire, the ALJ may permissibly reject check-off
13   reports that do not contain any explanation of the bases of their conclusions."  *Ford v. Saul*,
14   950 F.3d 1141, 1155 (9th Cir. 2020) (citations and internal quotation marks omitted).  Here,
15   PA Gillespie provided no explanation for why he checked the boxes in the manner he
16   checked them.  (AR at 397-99.)  Under these circumstances, it was permissible for the ALJ
17   to discount PA Gillespie's unexplained checkbox opinions pursuant to the supportability
18   factor.  *See, e.g.*, *Weiss v. Kijakazi*, 2023 WL 4030839, *1 (9th Cir. 2023) ("These opinions
19   were in check-box form and were not accompanied by explanation or narrative.  Because
20   these opinions contained little in terms of 'objective medical evidence and supporting
21   explanations,' the ALJ reasonably found them unpersuasive.").

22          The Court also finds no error in the ALJ's second reason for discounting PA
23   Gillespie's opinions pursuant to the supportability factor.  Although PA Gillespie opined
24   (among other things) that Plaintiff would have significant limitations in her ability to stand
25   and walk (AR at 395), the ALJ correctly noted that PA Gillespie's examination notes
26   repeatedly reflected an absence of gross motor or sensory deficits and no signs of edema
27   or weakness (AR at 400-01, 406, 412-13, 418-19, 424).  It was rational for the ALJ to
28   conclude that such observations were inconsistent with PA Gillespie's opined-to

limitations. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.") (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004)).

Turning to the consistency factor, the ALJ concluded that PA Gillespie's opinions should be discredited because they were "inconsistent with exam findings from other examiners describing the claimant as an individual with normal musculoskeletal range of motion, strength, sensation, and gait." (AR at 28.) This is a permissible basis for discrediting a medical source's opinion pursuant to the consistency factor, and the ALJ's finding of inconsistency was supported by substantial evidence. For example, during an examination on October 5, 2020, a different medical provider (PA-C Neal) noted that Plaintiff could stand without assistance, could walk to the examination table, could get onto the examination table, had a normal gait, could stoop without difficulty, had 5/5 strength in her bilateral upper and lower extremities, had normal grip strength, had normal muscle bulk, and had a range of motion within normal limits in all areas. (*Id.* at 463-65.) It was rational for the ALJ to conclude that PA-C Neal's observations were inconsistent with the severe standing- and walking-related restrictions to which PA Gillespie opined, even though PA-C Neal did not purport to evaluate (as PA Gillespie did) Plaintiff's ability to engage in such activities over the course of an eight-hour workday.

B. **Plaintiff's Symptom Testimony**

1. Standard Of Review

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations omitted). If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "providing specific,

clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).

### 2. The ALJ's Evaluation Of Plaintiff's Symptom Testimony

As noted, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR at 25.) The ALJ then identified what the Court perceives to be four reasons for this adverse credibility finding.

The first reason was inconsistency with the objective medical evidence. (*Id.* at 25.) Among other things, the ALJ noted that "objective EMG nerve conduction studies of the bilateral upper extremities have been negative for signs of median nerve dysfunction"; that "exam notes from the period at issue show that '[o]ther than the claimant's subjective complaints' of impaired sensation, physical examinations have been negative and unremarkable for signs of neuropathy"; that various "[p]hysical exam findings" showed "normal grip strength, 5/5 motor strength, and normal sensation throughout the bilateral upper extremities" as well as "normal gait, normal musculoskeletal range of motion, normal strength, and normal sensation throughout the bilateral lower extremities"; that "range of motion testing findings . . . [were] consistently . . . within normal limits"; and that "treatment records specially note . . . no signs of muscle weakness." (*Id.*)

The other three reasons were (1) inconsistency with Plaintiff's activities of daily living ("ADLs"); (2) pursuit of conservative/routine treatment modalities; and (3) inconsistency with the opinion evidence in the record. (*Id.* at 28 ["In sum, . . . [c]onsideration of the record as a whole, including the claimant's reported activities of daily living, conservative/routine treatment modalities, the longitudinal medical record, and the opinion evidence shows the claimant's allegations of disabling symptoms and limitations are not entirely consistent with and supported by the medical evidence and other evidence in the record."].) However, the ALJ did not provide any additional analysis with respect to these three reasons.

3. The Parties' Arguments

Plaintiff argues that the ALJ provided insufficient reasons for discrediting her symptom testimony. (Doc. 11 at 15-19.) As for the first reason (inconsistency with objective medical evidence), Plaintiff argues that the ALJ simply "summarized some medical records but failed to connect anything specific in the medical record to a specific inconsistency with any portion of [her] symptom testimony." (*Id.* at 16-17.) Plaintiff also argues that "simply listing normal findings from time-limited appointments does not provide a direct inconsistency when the ALJ failed to reconcile normal findings with [her] testimony that her symptoms increased with prolonged sitting, standing, or walking." (*Id.* at 17.) As for the ALJ's next reason (inconsistency with ADLs), Plaintiff argues that "[t]he ALJ did not provide any specific activities or explain how any activities were inconsistent with any specific portion of [her] symptom testimony." (*Id.* at 17-18.) As for the ALJ's next reason (conservative treatment), Plaintiff argues that "this was another improper medical opinion as the ALJ was not qualified to opine on what treatment was required." (*Id.* at 18.)

In response, the Commissioner first argues that was permissible for the ALJ to discredit Plaintiff's testimony due to its inconsistency "with the objective medical evidence" that showed "no motor or sensory deficits and normal extremities, range of motion, strength, sensation, and gait." (Doc. 13 at 5-6.) Next, the Commissioner argues that "the ALJ's finding that Plaintiff received conservative treatment was not a 'medical opinion' but rather a valid consideration in analyzing Plaintiff's symptoms." (*Id.* at 6.) Finally, the Commissioner argues that "Plaintiff was able to perform such activities as caring for animals, preparing meals, cleaning, doing laundry, driving, and shopping" and that "[t]he ALJ properly found these activities undercut Plaintiff's disability claim." (*Id.*)

In reply, Plaintiff argues that "the Commissioner failed to defend the ALJ's insufficient rationale, and simply listed known regulations, then repeated the ALJ's rationale and relied upon findings, without showing that the ALJ decision in fact complied with the *correct* standard for a claimant credibility evaluation or responding to [Plaintiff's]

arguments regarding the same." (Doc. 14 at 6-7.) Next, Plaintiff repeats her earlier arguments regarding the objective medical evidence. (*Id*. at 7.) As for conservative treatment, Plaintiff argues that the Commissioner "does not defend the ALJ's failure to explain what treatment would be required under [Plaintiff's] circumstances to render her testimony valid." (*Id.*) Finally, as for ADLs, Plaintiff faults the Commissioner for "provid[ing] a list of activities that the ALJ did not actually note in the decision" and contends that "an established principle of judicial review is that a reviewing court may not affirm based on facts or rationale upon which the agency did not rely." (*Id.* at 7-8.)

    4. <u>Analysis</u>

In section five of the underlying opinion, the ALJ provided an extensive discussion of why Plaintiff's symptom testimony was inconsistent with the objective medical evidence. (AR at 23-26.) The Court agrees with the Commissioner that the ALJ's analysis as to that issue was supported by substantial evidence. For example, although Plaintiff wrote in her function reports that she "[c]an not stand for 10-15 minutes," "can[']t sit for long about 15 minutes," and can only walk for 5 minutes before needing to stop and rest (AR at 317, 337), the objective medical records consistently showed no motor or sensory deficits, normal range of motion, normal strength, and normal gait. It was rational for the ALJ to view such records as inconsistent with Plaintiff's testimony.

But this determination does not end the analysis. Under Ninth Circuit law, inconsistency with the objective medical evidence may not serve as an ALJ's sole reason for discounting a claimant's symptom testimony—instead, it is simply a permissible consideration when coupled with other grounds for an adverse credibility finding. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("Claimants like Smartt sometimes mischaracterize [Ninth Circuit law] as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony. That is a misreading of [Ninth Circuit law]."); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence

is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Thus, it is also necessary to evaluate the sufficiency of the ALJ's other grounds for discrediting Plaintiff's symptom testimony.

It is here the ALJ's analysis falters. In the final paragraph of section five of the underlying opinion, the ALJ wrote: "In sum, . . . [c]onsideration of the record as a whole, including the claimant's reported activities of daily living, conservative/routine treatment modalities, the longitudinal medical record, and the opinion evidence shows the claimant's allegations of disabling symptoms and limitations are not entirely consistent with and supported by the medical evidence and other evidence in the record." (*Id.* at 28.) Although this paragraph identifies three additional reasons beyond inconsistency with the objective medical evidence (*i.e.*, inconsistency with ADLs, pursuit of conservative treatment, and inconsistency with the opinion evidence) for discounting Plaintiff's symptom testimony, all of which could theoretically serve as permissible bases for an adverse credibility finding under Ninth Circuit law,[3] the problem is that the opinion does not contain any reasoned analysis as to those additional reasons.[4] For example, the opinion does not identify Plaintiff's ADLs, let alone attempt to explain why her unspecified activities are inconsistent with her testimony. Likewise, the opinion does not identify the courses of treatment that Plaintiff pursued, let alone attempt to explain why they were conservative in

---

[3] *See, e.g., Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[T]he ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (cleaned up); *Smartt*, 53 F.4th at 500 ("The ALJ also properly discounted Smartt's subjective pain testimony in light of Smartt's generally conservative treatment plan"); *Ware v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6306454, *7 (D. Ariz. 2023) ("[T]he ALJ's third proffered reason for the adverse credibility determination was that Plaintiff's testimony conflicted with the opinion evidence that the ALJ deemed persuasive. This, too, appears to be a permissible basis under Ninth Circuit law for discounting a claimant's symptom testimony.") (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008)).

[4] Additionally, the Commissioner does not defend the sufficiency of the ALJ's fourth reason (inconsistency with the opinion evidence)—the answering brief argues that the adverse credibility finding should be upheld based on the ALJ's findings of inconsistency with the objective medical evidence, inconsistency with ADLs, and pursuit of conservative treatment. (Doc. 13 at 5-7.)

relation to other unspecified treatment options available to Plaintiff. Although the Commissioner attempts to provide reasoned explanations as to these issues in the answering brief, such *post hoc* rationalization is impermissible in the Social Security context. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

C.   **Remedy**

Plaintiff asks the Court to apply the "credit-as-true" rule, which would result in the remand of her case for the limited purpose of calculating benefits. (Doc. 11 at 19-20.)

"The credit-as-true analysis has evolved in our circuit over time, thus providing a challenge for application by the district court." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). As the Ninth Circuit has clarified in recent opinions, "[a]n automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." *Id. See also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 n.5 (9th Cir. 2014) ("[O]ur jurisprudence . . . requires remand for further proceedings in all but the rarest cases.").

On the merits, "[t]he credit-as-true rule has three steps. First, we ask whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Second, we determine whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful. And third, if no outstanding issues remain and further proceedings would not be useful, only then do we have discretion to find the relevant testimony credible as a matter of law. Even if all three steps are met, the decision whether to remand a case for additional evidence or simply to award benefits is in our discretion." *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023) (cleaned up). A district court properly exercises its discretion to remand for further proceedings where "there is serious doubt as

to whether [the claimant] is disabled." *Leon*, 880 F.3d at 1048. *See also Brown-Hunter*, 806 F.3d at 495 ("[E]ven if all three requirements are met, we retain flexibility in determining the appropriate remedy. We may remand on an open record for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.") (cleaned up).

The credit-as-true rule is inapplicable here. Although step one is satisfied in light of the ALJ's failure to provide legally sufficient reasons for discrediting Plaintiff's symptom testimony, step two is not—further administrative proceedings would be useful to enable the ALJ to address the analytical deficiencies discussed above, including why the ALJ viewed Plaintiff's symptom testimony as inconsistent with her ADLs and with her purportedly conservative course of treatment.

Alternatively, even if step two were satisfied, the Court would decline in its discretion to order a remand for benefits under step three because the record as a whole creates serious doubt as to whether Plaintiff is, in fact, disabled. As discussed, the ALJ permissibly discredited the opinions of the medical sources who attempted to opine to disabling limitations. Also, as the Commissioner attempts to show (albeit via impermissible *post hoc* reasoning) in the answering brief, there are legitimate reasons to question Plaintiff's symptom testimony. *Cf. Leon*, 880 F.3d at 1048 ("[W]e remand on an open record because there is serious doubt as to whether Leon is in fact disabled, given that the district court upheld the ALJ's other findings."); *Burrell v. Colvin*, 775 F.3d 1133, 1141-42 (9th Cir. 2014) (rejecting the claimant's argument that "because the ALJ's reasons for discrediting her testimony and Dr. Riley's assessment are legally insufficient, we have no choice but to . . . remand for an award of benefits" and concluding that a remand for further proceedings was the appropriate remedy because, even though "Claimant may be disabled," "evidence in this record not discussed by the ALJ" cast serious doubt on the claim of disability).

…

…

- 15 -

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **reversed**. This matter is **remanded** for further proceedings. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 8th day of December, 2023.

Dominic W. Lanza
United States District Judge